# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:14-CV-623-RJC-DCK

| | |
|---|---|
| JOHN J. HABOVICK, JR., | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| SOUTHWEST AIRLINES COMPANY, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion To Remand" (Document No. 6) and "Defendant's Motion To Dismiss Plaintiff's Complaint" (Document No. 11). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion to remand be <u>denied</u>, and the motion to dismiss be <u>granted</u>.

## I. PROCEDURAL BACKGROUND

Plaintiff John J. Habovick, Jr. ("Habovick" or "Plaintiff") initiated this lawsuit with the filing of his "Complaint" (Document No. 1-2) in the Superior Court of Mecklenburg County, North Carolina, on October 6, 2014. The Complaint asserts one claim for "wrongful discharge" against Defendant Southwest Airlines Company ("Defendant" or "Southwest"). (Document No. 1-2, p.9). Plaintiff contends his discharge was "in contravention of public policy." Id.

Defendant filed a "Notice Of Removal" (Document No. 1) with this Court on November 7, 2014. Defendant contends that removal to federal court is appropriate based on diversity jurisdiction and federal question. (Document No. 1, pp.2-8).

Plaintiff's pending "Motion To Remand" (Document No. 6) was filed on November 18, 2014. "Defendant's Motion To Dismiss Plaintiff's Complaint" (Document No. 11) was filed on December 30, 2014. Both pending motions have been fully briefed, and are now ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## II.  STANDARD OF REVIEW

> A civil action which is brought in state court, but over which the federal courts have original jurisdiction, may be removed by a defendant to the district court embracing the place where the action is pending. 28 U.S.C. § 1441(a). A motion to remand for lack of subject matter jurisdiction may be brought at any time. 28 U.S.C. § 1447(c); Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996). . . .
>
> Unless a case involves specialized issues, federal district courts may assert jurisdiction either on the basis of diversity of citizenship, 28 U.S.C. § 1332, or the existence of a federal question. 28 U.S.C. § 1331. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).

Trustee Servs. Of Carolina, LLC v. Daragjati, 2014 WL 1379530, at *1 (E.D.N.C. Apr. 8, 2014).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. Factual Background**

The undersigned will briefly summarize the Complaint's factual allegations below. Plaintiff is an experienced pilot with 21,000 pilot hours, and FAA ratings B-737 and B-717. (Document No. 1-2, p.6). Plaintiff was previously employed by AirTran Airways ("AirTran") as a co-pilot on the B-717. Id. Defendant Southwest acquired AirTran in May 2011, and began the integration of AirTran pilots to Southwest in November 2011. Id.

Plaintiff satisfactorily completed Southwest's ground school and simulator tests prior to his release for line flying, and was trained in, and passed, all B-737-700 simulator rides. (Document No. 1-2, pp.6-7). Although Southwest trained Plaintiff in the B-737-700 simulator, it

required him to pass his subsequent flight line tests in the B-737-300. (Document No. 1-2, p.7). Plaintiff alleges that there are significant differences between the B-737-300 and the B-737-700. Id.

Plaintiff further alleges that he was trained in a simulator by non-seniority list pilot instructors, but required to pass all flight tests with seniority list check airmen pilots. (Document No. 1-2, p.8). Southwest did not correct differences in training techniques; nor did Southwest inquire into the "wellbeing of the pilot, Mr. Habovick, who was placed under a great deal of stress and depressed from his failures by the line check airmen and his divorce." Id. At one point, Plaintiff was told he passed a line flight test, but that was later changed to a failure. Id.

Plaintiff asserts that he was ultimately discharged "in contravention of public policy." (Document No. 1-2, p.9).

**B. Motion To Remand**

Plaintiff contends that this action should be remanded to the Superior Court of the State of North Carolina. (Document No 6, p.1). Plaintiff first asserts that there is no federal question on the face of the Complaint; there is only a state claim for wrongful termination. (Document No. 6, pp.2-4). Plaintiff further asserts that there must be a federal question on the face of the Complaint for federal question jurisdiction to apply. (Document No. 6, p.3) (citing Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 369-70 (4th Cir. 2001).

In addition, Plaintiff seems to argue that Defendant's contention that this Court has original jurisdiction over this action pursuant to "the Railway Labor Act ("RLA"), 45 U.S.C. §§151-188, and aviation safety laws, 49 U.S.C. §§44701 *et seq.* and 14 C.F.R. Part 121," is inapplicable here because Plaintiff exhausted the grievance process under the collective bargaining agreement. See (Document No. 6, p.3) (citing Document No. 1, ¶¶ 19-21); see also, (Document No. 1, pp.3-4).

Plaintiff contends that the Southwest Airline Pilots Association ("SWAPA") "blocked the Plaintiff from the first step in the procedure by refusing to accompany him to the chief pilot meetings and then Captain Dave Ferguson unilaterally abolished First Officer Habovick's grievance." (Document No. 6, p.3) (citing Document No. 6-1).

Next, Plaintiff contends that this matter is not properly before this Court on the basis of diversity jurisdiction. (Document No. 6, pp.4-6); see also, 28 U.S.C. § 1332. Plaintiff acknowledges that "diversity for citizenship is proper," but argues that the amount in controversy does not exceed $75,000.00. (Document No. 6, p.4). Plaintiff notes that Defendant must show by a "preponderance of the evidence" that the required amount in controversy has been met. (Document No. 6, pp.4-5). Plaintiff argues that the damages requested are "greater than $10,000," but "less than $75,000." (Document No. 6, p.5).

Plaintiff further notes that he "did not request actual but only compensatory [damages]," explaining that:

> The Plaintiff never expected to be compensated for wages lost after termination. In fact the Plaintiff was prohibited from flying as a pilot because he surrendered his certificates to FAA and failed his FAA physical exam. There was no expectation of pilot wages because the Plaintiff had no license to fly.

(Document No. 6, pp.5-6).

In response, Defendant contends that "[t]he pleadings and undisputed evidence here establish that the amount in controversy is sufficient to establish jurisdiction," and that federal question jurisdiction is proper under the Railway Labor Act and the Federal Aviation Act. (Document No. 9, p.1).

Regarding the amount in controversy, Defendant agrees that it must prove the amount in controversy exceeds $75,000 at the time of removal, by a preponderance of the evidence.

5

(Document No. 9, pp.2-3) (citing Trustee Servs. Of Carolina, LLC v. Daragjati, 2014 WL 1379530, at *1 (E.D.N.C. Apr. 8, 2014)). "A defendant can satisfy this burden with evidence including calculations based on the complaint's allegations or by introducing evidence in the form of affidavits or declarations about how much it would cost to satisfy the plaintiff's demands, among other means." Id. (citing Dash v. FirstPlus Home Trust 1996-2, 248 F.Supp.2d 489, 495-99 (M.D.N.C. 2003)). "Once the defendant establishes the amount in controversy by a preponderance of the evidence, only a showing to a legal certainty that the claims are less will preclude jurisdiction." Id. (citing Lanier v. Norfolk S. Corp., 2006 WL 1878984, at *2 (D.S.C. July 6, 2006)).

The Complaint seeks "reinstatement as an employee pilot of Southwest;" damages "to include actual, consequential, exemplary, compensatory and any special damages in the full amount permitted under the law;" and "costs and attorneys' fees incurred in this action and in representation for the termination procedure." (Document No. 1-2 pp.9-10). Defendant specifically notes that the Complaint "does *not* assert any limitation on the ambiguous damages sought." (Document No. 9, pp.6-7).

Defendant further asserts that "it is well established that a claim for wrongful discharge allows a plaintiff potential recovery in the form of back pay, front pay, and emotional distress." (Document No. 9, p.7) (citing Blakeley v. Town of Taylortown, 756 S.E.2d 878 (N.C.App. 2014)). The undersigned observes that this Court has previously held that "when evaluating whether more than $75,000 was in controversy at the time the Complaint was filed, the district court should consider not only the monetary damages that a plaintiff seeks, but also the cost to the defendant of complying with any prospective equitable relief." Keith v. Clarke American Checks, Inc., 261

6

F.Supp.2d 419, 422 (W.D.N.C. 2004) (costs would exceed $75,000 statutory requirement if Plaintiff received back pay or was re-hired).

In support of its contention that the amount in controversy is satisfied here, Defendant reports that Plaintiff's gross wages were $138,608.57 for 2012, and $70,608.27 for the portion of 2013 he was employed prior to termination.  Id.  (citing "Declaration Of Monty Sparks" (Document No. 1-3)).  Based "solely on the potential for back pay and without consideration of any other additional forms of relief Plaintiff is also seeking," Defendant concludes that the amount in controversy exceeds $200,000.  (Document No. 9, pp.7-8).  Defendant further asserts that Plaintiff also has the potential for damages for emotional distress and other compensatory relief. (Document No. 9, p.8).

The undersigned finds Defendant's argument and calculations persuasive.  Moreover, Defendant's position is supported by the "Declaration Of Monty Sparks" (Document No. 1-3).  In contrast, Plaintiff declines to rebut Defendant's response and appears to rest on his vague and unlimited claims for damages.  See (Document No. 10, p.1) ("Any further argument would be redundant and circular.").  Plaintiff has failed to show to a legal certainty that his claims are less than $75,000.  (Document Nos. 6 and 10); see also, Lanier, 2006 WL 1878984, at *2.

The undersigned is satisfied that these parties are diverse and that a preponderance of the evidence supports a finding that the amount in controversy easily exceeds $75,000.  As such, it appears this matter is properly in federal court pursuant to 28 U.S.C. §1332, and that it is therefore unnecessary to address the issue of federal question.

Based on the foregoing, the undersigned will recommend that Plaintiff's motion to remand be denied.

**C. Motion To Dismiss**

Defendant seeks dismissal of Plaintiff's Complaint based on: (1) a failure to state a claim upon which relief may be granted "because Plaintiff has failed to identify *any* North Carolina public policy" which could support his claim of wrongful discharge; and (2) a lack of subject matter jurisdiction "because jurisdiction over Plaintiff's claim rests exclusively with the System Board of Adjustment under the Railway Labor Act and because Plaintiff's claim is pre-empted by federal aviation laws." (Document No. 11).

In support of its motion, Defendant first notes that in North Carolina an employment relationship is presumed to be "at-will" unless the relationship is somehow altered by a contract, and that termination of an at-will employee does not give rise to an action for wrongful discharge under North Carolina law. (Document No. 12, p.3) (citing Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331 (1997) and Considine v. Compass Group USA, Inc., 145 N.C.App. 314, 317 (2001), aff'd 354 N.C. 568 (2001). Defendant acknowledges that there is a narrow exception to the employment at will doctrine known as "wrongful discharge in violation of public policy." Id. (citing Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172 (1989) and Kurtzman, 347 N.C. at 333-34). However, Defendant also notes that "[t]he public policy exception to the at-will employment doctrine is confined to the express statements contained within [the North Carolina] General Statutes or [the North Carolina] Constitution." (Document No. 12, p.4) (quoting Whiting v. Wolfson Casing Corp., 173 N.C.App. 218, 222 (2005)).

The undersigned notes a few cases decided by this Court that also appear to be instructive on this point. First, in DeWitt v. Mecklenburg County, this Court opined that "[a]lthough North Carolina courts have not clearly defined the boundaries of the public policy exception, the North Carolina Supreme Court has said, '[a]t the very least public policy is violated when an employee

8

is fired in contravention of express public policy declarations contained in the North Carolina General Statutes.'" (DeWitt v. Mecklenburg Co., 73 F.Supp.2d 589, 604 (W.D.N.C. 1999) (quoting Amos v. Oakdale Knitting, Co., 331 N.C. 348, 353 (1992)).

Citing several of the cases identified above, this Court then held in Tichenor v. Bank of America Corp. that where a plaintiff fails to "allege an express public policy declaration in a statute or in the North Carolina Constitution that Defendant violated, . . . the claim for wrongful discharge fails to sufficiently allege an essential element of the claim." Tichenor v. Bank of America Corp., 3:08-CV-479-RJC-DLH, 2009 WL 2171296, at *2-3 (W.D.N.C. July 17, 2009).

In Johnson v. North Carolina, this Court dismissed a claim for wrongful discharge where the plaintiff "failed to identify a single state statute or constitutional provision that provides a legal remedy for her wrongful discharge; nor has she alleged how Defendant's actions were injurious to the public." Johnson v. North Carolina, 905 F.Supp.2d 712, 725 (W.D.N.C. 2012). The Court noted that

> the Fourth Circuit and the North Carolina Court of Appeals have likewise adopted a narrow interpretation of the public policy exception, holding that in order for a plaintiff to recover for wrongful discharge, he should "allege that the 'defendant's conduct violated [an] explicit statutory or constitutional provision, [or] allege defendant encouraged plaintiff to violate [a] law that might result in potential harm to the public.'"

Johnson, 905 F.Supp.2d at 725 (quoting Jefferson v. Biogen Idec Inc., 2012 WL 3629219 (E.D.N.C. Aug. 22, 2012)).

Defendant appears to accurately conclude that Plaintiff has not identified *any* provision of North Carolina statutory or constitutional law that has been violated, and has not even identified *any* public policy that purportedly supports his wrongful discharge claim. (Document No. 12, p.4); see also, (Document No. 1-2). Defendant further argues that to the extent Plaintiff relies on Sides

9

v. Duke University, 74 N.C.App. 331, 328 (1985), that case is inapplicable to this case because Plaintiff was not placed in a position of doing anything to violate North Carolina law to keep his employment. (Document No. 12, p.5).

Despite compelling authority supporting Defendant's argument that this matter should be dismissed because Plaintiff has failed to adequately state a claim for wrongful discharge, "Plaintiff's Response To Defendant's Motion To Dismiss" (Document No. 13) barely addresses Defendant's argument. In fact, "Plaintiff's Response…" declines to specifically address any of Defendant's arguments or authority, and makes only a few conclusory statements. (Document No. 13, pp.1-2). Regarding the alleged deficiency of the claim for wrongful discharge, Plaintiff asserts that "[a]ny further argument would be redundant, circular and task the limited time of the court" and then simply concludes that this Court should "[l]et a state court decide if this is a violation of the state's public policy." Id.

In pertinent part, "Defendant's Reply…" (Document No. 14) reiterates that the Complaint contends that Defendant violated a public policy, "but never identifies any such public policy, even after several opportunities." (Document No. 14, p.4). Defendant concludes that Plaintiff's failure to articulate an express North Carolina public policy is fatal to his claim. Id. The undersigned agrees.

While the undersigned appreciates brevity and an efficient use of resources, Plaintiff's minimalist approach here is not helpful to the Court. See (Document No. 13). Plaintiff's lack of engagement in the arguments for and against dismissal, and his failure to seek to amend his Complaint, further suggests that there are insufficient facts and legal authority to support his claim in this Court or in state court.

Although the Complaint makes some assertions that Plaintiff's training was not what he might have hoped it would be, the real crux of the Complaint is that Plaintiff was not approved as a pilot for Defendant, and was thus discharged, because he failed to pass the requisite tests. (Document No. 1-2). Moreover, in his "Motion To Remand" Plaintiff further elaborates that "he was prohibited from flying as a pilot because he surrendered his certificates to FAA and failed his FAA required physical exam." (Document No. 6, p.6). Plaintiff's own factual allegations do not support his contention that his discharge was unlawful.

In short, Plaintiff has failed to allege a violation of an express public policy under North Carolina's statutes or Constitution, or to otherwise explain how declining to retain a pilot based on the factual allegations in the Complaint violates any public policy. (Document No. 1-2). Plaintiff's failures to allege an essential element of his claim, and to allege sufficient factual content to support a plausible claim, require dismissal of this action. See <u>Tichenor v. Bank of America Corp.</u>, 2009 WL 2171296, at *3.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiff's "Motion To Remand" (Document No. 6) be **DENIED** and that "Defendant's Motion To Dismiss Plaintiff's Complaint" (Document No. 11) be **GRANTED**.

### V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and

Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: May 14, 2015

David C. Keesler
United States Magistrate Judge